U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

Signed March 03, 2011

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MAXIMO & MARCELA SIFUENTES, | § | |
| | § | |
| Debtor. | § | CASE NO. 08-43831-DML-11 |
| | § | |

### MEMORANDUM ORDER

Before the court is the *Trustee's Motion to Sell Real Property Free and Clear of Liens Pursuant to 11 U.S.C. Section 363* (the "Motion") filed by Tim Truman, standing chapter 13 trustee (the "Trustee"). Although the court previously granted the relief central to the Motion (sale of the Property (as defined below)), it remains for the court to determine whether a lien claimed by Bluebonnet Financial Assets ("BFA") validly attached to proceeds of the sale. The court heard argument respecting this question during a hearing on the Motion on December 3, 2010. At the conclusion of the hearing, the court invited the parties to submit briefs in support of their respective positions, and the parties have done so.

This matter is subject to the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b) (2) (K) and (N). This memorandum order includes the court's findings and conclusions.

Fed. R. Bankr. P. 7052 and 9014.

The matter before the court relates to real property located at 6401 Baker Blvd., Richland Hills, Texas (the "Property"). Until January 23, 2006, the Property was owned by Maximo Sifuentes ("Sifuentes" and, with his wife, Marcella, "Debtors"). On that day he sold the Property to Rigoberto Mendez ("Mendez") for less than reasonably equivalent value.

On January 9, 2008, Sifuentes commenced a chapter 13 case in this court. That case was dismissed the following June, and Debtors filed the instant case on August 27, 2008. That case in turn was dismissed on April 3, 2009. Prior to dismissal of Debtors' case, the Trustee commenced suit in this court against Mendez to recover the Property (the "Adversary"). Consequently the Trustee sought (and was granted) inclusion of the following language in the order of dismissal (the "Dismissal Order"):

> **IT IS . . . ORDERED** that the following property of the estate shall **NOT** revest in the Debtors, but remain in the estate, subject to administration by the trustee for the benefit of creditors:
>
> "[sic] Any and all legal or equitable interests of the Debtors in [the Property] described legally as:
>
> **TRACT I**
> LOT 15, BLOCK D, RICHLAND HILLS, AN ADDITION TO THE CITY OF RICHLAND HILLS, TARRANT COUNTY, TEXAS, ACCORDING TO THE PLAT RECORDED IN VOLUME 388-C, PAGE 154, PLAT RECORDS OF TARRANT COUNTY, TEXAS ALSO KNOWN AS 6401 BAKER BLVD. RICHLAND HILLS, TEXAS."[sic]
> **TRACT II**
> LOT 6 & 9B BLOCK A, NORWOOD SUBDIVISION, CITY OF HURST, TARRANT COUNTY, TEXAS.
> **TRACT III**
> BLOCK A, LORT [sic] 7R, NORWOOD SUBDIVISION, HURST, TARRANT COUNTY, TEXAS. 100 HARRISON LANE, HURST, TEXAS.
>
> **IT IS FURTHER ORDERED** that the trustee is hereby authorized to continue administration of the estate, including pursuit of any cause of action pertaining to Tract I under 11 U.S.C. §§ 544 and 550, asserted in

the pending Adversary Proceeding No. 09-04133-dml, styled Tim Truman vs. Rigoberto Mendez [the Adversary].

Sifuentes owed money to BFA but failed to give BFA notice of his bankruptcy cases. BFA brought suit against Sifuentes in 2009 and obtained a judgment against him in the original amount of $66,998.42 (the "Judgment"). With interest, the amount owed BFA pursuant to the Judgment now exceeds $73,000. BFA recorded the Judgment in the county real property records on September 2, 2009, thus encumbering any real estate in the county that was owned by Sifuentes.

Thereafter the Adversary was resolved by agreement, and Mendez deeded the Property to the Trustee. Sale of the Property followed. The issue now before the court is whether BFA's judgment lien attached to the Property and now entitles BFA to payment of the Judgment from the proceeds of sale of the Property ahead of creditors with unsecured claims.

Recording of the Judgment in the county records would affix a lien only to property owned by Sifuentes. Thus, whether BFA has a lien on proceeds of the sale of the Property depends on whether Sifuentes had an interest in the Property between entry of the Dismissal Order and sale by the Trustee of the Property to which interest BFA's judgment lien could attach. The court concludes that Sifuentes had no interest in the Property during that time and, therefore, BFA's lien did not attach to the Property or, by extension, the proceeds of its sale.

This conclusion is required by the plain meaning of relevant provisions of the Bankruptcy Code (the "Code").[1] *See Lamie v. United States* Trustee, 540 U.S. 526, 534 (2004); *United States v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989).

The first provision the court must look to is section 349, which governs the effects of dismissal of a case. Section 349(b) provides:

---

[1]   11 U.S.C. §§ 101 *et. seq.*

> (b) *Unless the court, for cause, orders otherwise*, a dismissal of a case other than under section 742 of this title —
>
>   (1) reinstates—
>
>     (A) any proceeding or custodianship superseded under section 543 of this title;
>
>     (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and
>
>     (C) any lien voided under section 506(d) of this title;
>
>   (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and
>
>   (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

(emphasis added).

Pursuant to section 349(b) the court may therefore order that property of the estate not revest in its prior owner and that property subject to suit for fraudulent transfer not revert to the fraudulent transferee. Case law offers abundant support for application of section 349(b) as it is written to provide for retention by the trustee of property including litigation in progress. *See* 3 Collier on Bankruptcy ¶ 349.03[2] (16th ed. 2010); *In re Prud'homme*, 161 B.R. 747, 751 (Bankr. E.D.N.Y. 1993).

Moreover, Code § 362(c)(1) provides that the automatic stay "of an act against property of the estate continues until such property is no longer property of the estate." As section 349(b)(3) clearly contemplates that the estate may survive dismissal, to the extent property is otherwise revestable in the debtor, it may, by order of the court, be continued in a bankruptcy estate for administration by the trustee.

In the case at bar, when BFA's judgment lien arose, the Property was titled in Mendez. To the extent that, by operation of law or otherwise, Sifuentes held any interest

in the Property following its sale to Mendez, the Dismissal Order retained that interest in the estate and in the Trustee's possession. As such it was protected by the automatic stay of section 362(a). Pursuant to Code § 362(a)(1) and (4), the Property, to the extent owned by the estate could not be encumbered by BFA, and any lien purporting, in violation of those provisions, to attach to the Property would be void *ab initio*. *See*, 3 Collier on Bankruptcy ¶ 362.12[1] (16th ed. 2010).[2]

If, on the other hand, the Property was owned entirely by Mendez prior to its conveyance to the Trustee, obviously BFA's lien could not attach to it.

Since the Adversary was also preserved to the Trustee in the Dismissal Order, BFA's lien could not have intervened ahead of the Trustee when he recovered the Property through an agreed resolution of the Adversary. The Adversary was pursued principally under Texas fraudulent transfer law and Code § 544(b).[3] Contrary to BFA's contention, the Trustee's rights under section 544(b) and state law to recovery of property are not limited to the amount owed creditors who might have invoked the state fraudulent transfer statute. *See* 5 Collier on Bankruptcy ¶ 544.06[4] (16th ed. 2010); *Moore v. Bay*, 284 U.S. 4 (1931).

For the foregoing reasons, the court concludes that BFA's judgment lien did not attach to the Property. Accordingly, it need not be satisfied from proceeds of sale of the

---

[2] Although in the Fifth Circuit acts in violation of the stay are considered voidable rather than void (*see, e.g., In re Jones*, 63 F.3d 411 (5th Cir. 1995)), the violative act must be validated by annulment of the stay; where, as here, the stay was clearly in place at the time the Judgment was recorded, the transfer is void *ab initio*. *See In re Grotjohn*, 289 Fed. Appx. 702, 705 (5th Cr. 2008), aff'g *Reed v. Rabe*, (*In re Grotjohn*), 376 B.R. 496 (N.D. Tex. 2007) (holding that an attempted transfer by the debtor of estate property had no effect).

[3] BFA devoted a good deal of its post hearing brief to the Trustee's alternative claim under Code § 544(a)(3), and raised issues respecting the Trustee's status under that provision as a bona fida purchaser. As the court concludes the Trustee's claims under section 544(b) were those on which he recovered the Property, it need not deal with those issues.

Property.  The Trustee is authorized to obtain and disburse the proceeds of sale as provided by law without regard to BFA's judgment lien.  The Motion, accordingly, is GRANTED to the extent relief has not already been afforded thereon.

It is so ORDERED.

# # # # #END OF MEMORANDUM ORDER # # # #